Abel & Hodges *v.* Wilder.

ABEL & HODGES *v.* J. T. WILDER *et al.*

STATUTE OF FRAUDS.   *Parole promise to pay debt of another.*   A written promise to " arrange the debt," contained in a letter by a third party to a creditor who had recovered judgment, on which said third party was asking delay, is a valid promise to pay such debt, and will warrant judgment against him on delay granted.

FROM HAMILTON.

Appeal from the Chancery Court at Chattanooga. W. M. BRADFORD, Ch.

KEY & RICHMOND for complainants.

WHEELER & MARSHALL for defendants.

DEADERICK, C. J., delivered the opinion of the court.

Complainants are the assignees of a note given to Carvin for a tract of land by Hoskins. A bond for title to the land was given upon payment of the note to complainants. Judgment was rendered on this note in favor of complainants, on the 30th of October, 1875, by a justice of the peace, for $408.06.

On the 19th of November, 1875, defendant Wilder wrote to Abel as follows: · "I wish you to hold the execution against Hoskins on the Carvin title for some $400, until I get back, and I will arrange it for you.   J. T. Wilder."

No execution had in fact issued, but the sheriff

had the claim for collection and handed to Abel this note from Wilder, whereupon Abel deposes "that he ceased all effort to collect the debt until Mr. Wilder told me he would not pay it, and then began this suit."

On the 17th of January, 1876, an execution was issued on this judgment and returned by the sheriff "15 Feb., 1876, for an alias." The alias issued the 22d of August, 1877, and was returned the same day *nulla bona*, and this bill was filed the same day, seeking to have the land sold for purchase money, and to hold Wilder liable for the debt. The bill makes Hoskins, Wilder and Carvin defendants.

Wilder admits the writing of the note, but insists it is not a promise to pay the debt, and that he expected to pay it out of funds to come into his hands belonging to Hoskins, but he never received said funds, and after a short absence from home, on his return he so told Abel. Certainly the writing is not literally a promise to pay the debt, but it is a request to Abel not to urge the collection of the claim, and a promise to arrange it, upon his return home. In consideration of this request, Abel took no steps for its collection, at a time when he could probably have made the money. He did wait until after Wilder's return upon his debtor, and upon this condition it was that Wilder agreed, in writing, to pay the debt.

The chancellor, however, gave complainant a decree for the sale of the land, but refused any relief against Wilder, and complainant appealed. This, we are of opinion, was erroneous.

The language employed, that he would "arrange" the debt, we think fairly imports an agreement to pay it. The amount was ascertained by judgment, and it has been held, a promise to "settle," if made in reference to a liquidated amount, is equivalent to a promise to pay.

The chancellor's decree will, therefore, be so modified as to direct the proceeds of sale of land to be applied in the first instance as ordered by him, and if the sale shall not yield enough to pay charges upon it and the costs of this court and the court below, the chancellor will render a decree against defendant Wilder for the remainder of said judgment and costs which may not be satisfied by the sale of the land.

This cause will be remanded to the chancery court for the execution of the decree of this court.